**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **HEATHER R. FITZGERALD, on behalf** | ) | |
| **of herself and all others similarly situated,** | ) | Case No.   3:20-cv-1004 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S COLLECTIVE** |
| **v.** | ) | **ACTION COMPLAINT FOR** |
| | ) | **VIOLATIONS OF THE FAIR** |
| **FOREST RIVER MANUFACTURING LLC,** | ) | **LABOR STANDARDS ACT** |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S FLSA COLLECTIVE ACTION COMPLAINT FOR DAMAGES AND REQUEST FOR TRIAL BY JURY

Plaintiff Heather R. Fitzgerald ("Fitzgerald" or "Plaintiff"), on behalf of herself and all others similarly situated, files this FLSA Collective Action Complaint against Defendant Forest River Manufacturing LLC ("Forest River" or "Defendant"), showing in support as follows:

## I.   INTRODUCTION

### A.  Introductory Description of Plaintiff's FLSA Collective Action Overtime Claims Based Upon Defendant's Piece Rate Wage Scheme

Fitzgerald brings this collective action against Forest River under the Fair Labor Standards Act ("FLSA").  Fitzgerald's complaint addresses a class-wide violation of the FLSA that Forest River is committing against Fitzgerald and all similarly situated Forest River manufacturing employees who were non-exempt and were paid wages on a piece rate basis. Forest River piece rate-paid employees clock in at the beginning of each workday and clock out at the end of each workday, however, the employees are generally not paid at an hourly rate of pay, nor were the employees paid for all of the hours worked.

1

Rather, Fitzgerald and all putative collective action plaintiffs were primarily paid based upon the number of units (recreational vehicles and camper trailers) they completed, which is a form of piece rate pay. The hours spent performing this work is called "productive time," and Forest River paid Fitzgerald and putative collective action plaintiffs on a piece rate basis for their productive time only. There was significant time in between productive work time, or "non-productive time," during which employees were waiting to work on a next unit or employees were sweeping or cleaning. Fitzgerald and her fellow piece rate employees should have been paid for this "non-productive time" which occurred during the middle of their continuous workdays, but Forest River did not pay for the majority of this time.[1]

Under the FLSA, in some situations, an employer is permitted to count paid productive time as compensation for all hours worked, including non-productive time, but in order to do so, the employer must first have an agreement or an understanding with the employee before the work commences. That agreement must provide that the compensation for productive time only is intended to pay for all time worked, including the non-productive and waiting time. If there is such an agreement, the employer can then pay only a one-half time premium for hours worked in excess of 40 in a workweek (overtime hours). However, if no such agreement or understanding exists, then the employer must pay one and one-half times the regular rate for overtime hours. Additionally, when no such agreement or understanding exists, the regular rate is calculated by taking only the productive pay divided by the productive hours only. Fewer hours divided into productive pay increases the overtime compensation because the regular rate is not diluted; and when there is no agreement, the employee must be paid at one and one-half times the regular rate of pay rather than just a one-half time premium.

---

[1] Forest River paid Fitzgerald and her fellow piece rate employees an hourly rate for certain "non-productive" tasks, such as "Inventory."

In this case, Forest River had no agreement, understanding or even any explanation provided to its employees that it was not going to pay for non-productive hours or that piece rate pay was intended to cover both productive and non-productive hours.  Forest River provided no meaningful explanation of its formula used to calculate piece rate wages and provided no explanation of whether the piece rate pay was intended to cover only productive hours or cover both productive and non-productive hours.  Forest River violated the FLSA by diluting the regular rate of pay to Fitzgerald and all similarly situated piece rate workers when it included all work hours recorded on time clocks in calculating the regular rate of pay, resulting in the significant underpayment of overtime wages.  Forest River also violated the FLSA by failing to pay overtime wages at the full one and one-half time the regular rate, which Forest River was required to pay since it had no agreement or understanding to pay any other way with employees before work was performed.

**B.  Introductory Description of Plaintiff's FLSA Collective Action Claims Based Upon Illegal Wage Deductions (Kickbacks) Which Violate the Fair Labor Standards Act**

Fitzgerald will serve as the representative of all opt-in plaintiffs who worked for Forest River at any of its manufacturing locations in a collective action under the FLSA.  Forest River was taking wage deductions in a category it called "TOOL" to cover costs of work tools and parts Forest River required Fitzgerald and fellow employees to have and use at work.  Many of the "TOOL" wage deductions taken by Forest River from wages earned by Fitzgerald and all Forest River employees constituted unlawful "kickbacks" in violation of the FLSA.  Specifically, wage deductions for items which benefit the employer or primarily benefit the employer, such as deductions for tools required by the employer for work, or other facilities, constitute illegal kickbacks and violate the FLSA's "free and clear, no kickback" rule when those deductions cut into an employee's receipt of a minimum wage or overtime wages.  29 CFR § 531.35.  While it

3

is unclear how frequently these kickbacks for tools caused Fitzgerald and her similarly situated coworkers to suffer a minimum wage violation, there is no question that Forest River's unlawful kickback deductions caused Fitzgerald and her similarly situated coworkers to suffer loss of earned overtime wages.  The fact that Forest River's illegal kickback deductions repeatedly cut into overtime wages Forest River paid to Fitzgerald and pays to employees in a lump sum that includes wages for overtime hours of work and overtime premiums.  Fitzgerald and her similarly situated coworkers routinely worked overtime hours for Forest River (in excess of 40 hours in a workweek).  This FLSA collective action will apply to all Forest River employees subjected to one or more unlawful kickbacks.

Fitzgerald's FLSA collective action claims based upon Forest River's illegal wage deductions for costs of tools are perfect for class treatment and will be easy to prove.  All of Forest River's wage violations will be shown on the face of its pay stubs to employees, which show every unlawful (FLSA) kickback taken from every Forest River employee.

## II.    <u>NATURE OF THE CASE</u>

1.    Forest River is in the business of manufacturing recreational vehicles, such as motorhomes, and recreational camper trailers.  In connection with its operations, Defendant employs non-exempt manufacturing employees.

2.    Fitzgerald was employed by Forest River and its predecessor company, Coachmen, from mid-2003 until Fitzgerald voluntarily resigned her employment in approximately February 2019.  Fitzgerald left her employment with Forest River/Coachmen on two occasions between 2003 and 2019.  Fitzgerald worked for Defendant at three different manufacturing plants in Middlebury, Elkhart County, Indiana.  At all times, Fitzgerald was employed as a non-exempt manufacturing employee.

3.      Plaintiff and the putative collective action members regularly worked in excess of 40 hours per workweek as employees of Defendant but were not paid all overtime premium compensation owed to them under the FLSA by Defendant.

4.      Plaintiff and the putative collective action members (1) worked both productive and non-productive hours; (2) were primarily paid by Defendant on a piece rate basis only for their productive hours (e.g. time spent engaged in manufacturing work); and (3) were generally not paid for their non-productive hours (e.g. wait time), except for certain non-productive tasks such as Inventory for which they received a separate hourly rate of pay.

5.      Defendant paid Plaintiff and the putative collective action members an overtime premium equal to one-half of an improperly calculated regular rate of pay instead of time and one-half of a properly calculated regular rate of pay in violation of the FLSA.

6.      Defendant improperly calculated Plaintiff's and the putative collective action members' regular rate for purposes of computing overtime compensation by including both paid productive/non-productive hours and unpaid non-productive hours in the regular rate calculation in violation of the FLSA.  This improper calculation resulted in the dilution of Plaintiff's and the putative collective action members' overtime rates, which ultimately resulted in the underpayment of overtime compensation.

7.      Defendant was required by the FLSA[2] to calculate the Plaintiff's and the putative collective action members' regular rates of pay for purposes of computing overtime compensation by dividing their weekly piece rate pay by the productive hours worked only. Defendant failed to do so.

---

[2] 29 C.F.R. § 778.318(b) ("In the absence of any agreement setting a different rate for nonproductive hours, the employee would be owed compensation at the regular hourly rate set for productive work for all hours up to 40 and at a rate at least one and one-half times that rate for hours in excess of 40.").

8.      Then, Defendant was required by the FLSA to pay Plaintiff and the putative collective action members overtime compensation equal to one and one-half times its piece rate employees' regular rate of pay for all hours worked, both productive and non-productive time, in excess of 40 in a workweek.  Defendant failed to do so.

9.      Defendant is and has been taking unlawful wage deductions from its employees' pay checks for costs of tools Defendant requires employees to buy and use for work.  The wage deductions are described as "TOOL" on employee pay stubs.  These deductions violate the FLSA, particularly as the deductions cause overtime violations, because Defendant is violating the FLSA's rule that wages (including payment of an overtime wage) must be paid free and clear, unconditionally, and not subject to any kickbacks.

10.     Plaintiff files this lawsuit individually and on behalf of the putative collective action members and seeks all damages available under the FLSA, including unpaid wages, unpaid overtime wages, liquidated damages, legal fees, costs and expenses, and post-judgment interest.

### III.      THE PARTIES, JURISDICTION AND VENUE

11.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

12.     Fitzgerald is a natural person. She has standing to file this lawsuit.

13.     Fitzgerald is a former employee of Defendant with dates of employment, albeit with two brief interruptions, from approximately mid-2003 through February 2019.

14.     Fitzgerald was employed by Defendant as a non-exempt manufacturing employee. During her employment, she worked at three of Defendant's plants in Middlebury, Elkhart County, Indiana.

15.     Fitzgerald's consent to be a party plaintiff to this FLSA action pursuant to 29 U.S.C. §216(b) is attached hereto as Exhibit 1.

**A.      FLSA Collective Action Members**

16.     The putative collective action members are all current and/or former employees of Defendant who work/worked for Defendant as a non-exempt manufacturing employee in the United States, are/were paid on a piece rate basis, and who worked 40 or more hours in any workweek during the period from three (3) years preceding the filing of this Complaint through the disposition of this matter.  Based upon information and belief, Forest River employs piece rate workers at manufacturing plants in the States of Indiana, Michigan, Georgia, California and Oregon.

17.     The putative collective action members are similarly situated to the Plaintiff, and to one another, within the meaning of Section 216(b) of the FLSA.

18.     Plaintiff reserves the right to redefine the class, request more than one class, and/or request additional sub-classes relative to any motion for conditional certification and/or motion for decertification filed in this lawsuit.

**B.      Defendant Forest River Manufacturing LLC.**

19.     Defendant is in the business of manufacturing recreational vehicles, such as motorhomes and recreational camper trailers.

20.     Defendant is a domestic corporation that is organized under the laws of the State of Indiana.  During all times relevant to this lawsuit, Defendant has done business in the State of Indiana. Defendant has numerous operating locations in Indiana.

21.     At all times relevant to this lawsuit, Defendant is and has been an "enterprise engaged in commerce" as defined by the FLSA.

22.     At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

23.     At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold, and/or otherwise worked on goods and/or materials that have been moved in and/or produced for commerce by any person.

24.     On information and belief, at all times relevant to this lawsuit, Defendant has had annual gross volume of sales made or business done in excess of $500,000.

25.     Defendant's principal place of business is 900 County Road 1 North, P.O. Box 3030, Elkhart, Indiana 46515.

26.     Defendant may be served with summons through its registered agent, Darrel O. Ritchie, 900 County Road 1 North, Elkhart, Indiana 46514.

### C.     Jurisdiction and Venue

27.     The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

28.     During all times relevant to this lawsuit, Defendant has done business in the State of Indiana and continues to do business in the State of Indiana.  Defendant has numerous operating locations in Indiana.

29.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff bases her claims on federal law, namely the FLSA.

30.     Venue is proper in this district and division because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district and division.

## IV.   FACTUAL BACKGROUND

**A.** **Facts Supporting Plaintiff's FLSA Collective Action Claims Based Upon Unlawful Piece Rate Wages**

31.   Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

32.   At all relevant times, Defendant employed non-exempt manufacturing employees.

33.   The job duties of Defendant's manufacturing employees include non-exempt manual work.

34.   Defendant employed thousands of non-exempt manufacturing employees during the time period of three years preceding the date this lawsuit was filed and forward.

35.   Plaintiff and the putative collective action members are and/or were employed by Defendant during the time period of three years preceding the date this lawsuit was filed and forward. During this time period, Plaintiff and the putative collection action members routinely worked in excess of 40 hours per workweek.

36.   Defendant had Plaintiff and the putative collective action members clock in at the beginning of their workday and clock out at the end of their workday.

37.   Plaintiff and the putative collective action members were paid based on the number of units they completed, which is piece rate pay. The hours spent performing this work is called "productive time" relative to the FLSA's unique overtime rules concerning piece rate workers.  Defendant primarily paid Plaintiff and the putative class and collective action members on a piece-rate basis.

38.   During the continuous workday between clock in and clock out, Plaintiff and the putative collective actions members also spent significant amounts of time waiting for their units so that they could perform their manufacturing duties, taking inventory, and/or sweeping and

performing other cleaning tasks.  The hours spent performing this work is called "non-productive time" relative to FLSA's unique overtime rules concerning piece-rate workers. With the exception of paying a separate hourly rate for time spent inventorying, Defendant did not pay Plaintiff and the putative class and collective action members for their non-productive time.

39.     There existed no agreement between Defendant and Plaintiff or between Forest River and any putative collective action member that Defendant would count production pay as pay for all hours worked. There existed no such agreement before such worked commenced, nor such an agreement at any time.

40.     Defendant cannot establish or show such an agreement.

41.     By paying Plaintiff and those similarly situated for productive time only, with no agreement to do so before work commenced, Defendant violated the FLSA.

42.     Defendant also violated the FLSA because it paid only a one-half premium for overtime hours, rather than one and one-half times their lawful regular rates of pay for all hours worked in excess of 40 in a workweek. Instead, Defendant paid Plaintiff and the putative class and collective action members overtime compensation equal to one-half of an unlawful regular rate of pay for all hours worked in excess of 40 in a workweek in violation of the FLSA.

43.     Defendant improperly calculated Plaintiff's and the putative class and collective action members' regular rates of pay by including both productive and unpaid non-productive hours in the regular rate calculation in violation of the FLSA.

44.     Forest River paid Fitzgerald on a piece rate basis for the work she performed. The same is true for all similarly situated Forest River employees.  Under the FLSA, piece rate payment of wages and calculation of overtime wages is governed by the regulation found at 29 USC § 778.318.

45.     There can be no doubt 29 USC § 778.318(b) <u>does</u> apply to Forest River's piece rate wages paid to Fitzgerald and all similarly situated plaintiffs; however, Forest River violated the FLSA and failed to properly pay Fitzgerald and similarly situated plaintiffs wages and overtime wages in a manner which complied with 29 USC § 778.318(b).  Forest River was required to pay Fitzgerald and her similarly situated coworkers a regular rate and pay overtime wages at a regular rate that complies with the following: "In the absence of any agreement setting a different rate for nonproductive hours, the employee would be owed compensation at the regular hourly rate set for productive work for all hours up to 40 and at a rate at least one and one-half times that rate for hours in excess of forty.  Here, Forest River did not pay wages for most non-productive hours and it did not have an agreement setting a different rate for such hours.

46.     Further, 29 USC § 778.318(c) does not apply in any way to Forest River's piece rate system for, at least, all of the following reasons:

a.      Forest River does not and did not have any "agreement" or any "understanding" with Fitzgerald and her similarly situated coworkers to use piece rate pay to compensate them for both productive and nonproductive work hours;

b.      Forest River does not and did not have any "agreement" or any "understanding" with Fitzgerald and her similarly situated coworkers to allow Forest River to dilute the regular rate by dividing piece rate pay by all work hours (both productive and nonproductive hours);

c.      Forest River does not and did not have any "agreement" or any "understanding" with Fitzgerald and her similarly situated coworkers that existed <u>before the work was performed</u> to permit Forest River to include nonproductive hours in the calculation of a piece rate-based regular rate of pay for the purposes of calculating overtime compensation;

d.      Far from any type of "agreement" or "understanding" about Forest River's piece rate wage system, Fitzgerald and her similarly situated coworkers have absolutely no idea or understanding of the formula Forest River used to calculate piece rate wages paid in any workweek.  In the same way,

11

Fitzgerald and her similarly situated coworkers have absolutely no idea or understanding of the formula Forest River used to calculate or to pay their overtime wages paid in any workweek;

e.      Forest River itself has not explained the formula it used to pay Fitzgerald or any of her similarly situated coworkers piece rate wages in any given workweek; and,

f.      Proving that it never had any type of "agreement" or "understanding" with its employees to pay on a piece rate basis that included compensation for nonproductive work hours and provided overtime wages based on a diluted regular rate of pay, Forest River employees were never told the piece rate formula and    employees never received an explanation of how their piece rate wages  had been calculated or how overtime wages were paid in any given on any pay stub.

47.    Forest River's piece rate wages paid to Fitzgerald and her similarly situated coworkers are not and never have been "bona fide," as is required under the FLSA.  In order to avoid violation of the FLSA overtime provision (29 USC § 207(a)) when paying wages at "piece rate," the piece rate wages must be "bona fide."  29 USC § 207(g)(1)&(2).  Forest River's piece rate system violates the FLSA's "bona fide" piece rate requirement.  Forest River's only written policy communicated to its employees about its piece rate wage scheme reads:

"If you are a 'piece rate' employee whose normal rate of pay depends on the number of pieces you produce, and if you perform overtime work, you will be paid a rate of one and one-half (1-1/2) times your piece rate of pay for the pieces you produce during any overtime worked.  Various state laws may differ concerning overtime payment and your situation will reflect your State requirements."

48.    Forest River does not keep records that differentiate between its employees' "productive hours" of work and employees' "non-productive hours" of work.  This means Forest River does not have any records, much less accurate records, of the "non-productive hours" of work Fitzgerald and any similarly situated person worked in any work week.  This also means Forest River does not have any records, much less accurate records, of the "productive hours" of work Fitzgerald and any similarly situated person worked in any work

week.

49.     Based upon information, belief and personal work experience, Fitzgerald conservatively estimates and alleges that she and each similarly situated coworker spent at least ten percent (10%) of recorded work hours in "non-productive hours" involving work hours spent in waiting and cleaning tasks each workweek.  This means Fitzgerald and similarly situated coworkers would spend at least 10% of overall work hours waiting, cleaning or otherwise performing tasks which were not "productive" in the sense that those "non-productive hours" of work would not enable workers to generate any wages from production-based work.

50.     To provide a specific example of the type of piece rate-based FLSA overtime wage violation at issue in this lawsuit, Fitzgerald describes wages paid to her in a check dated April 13, 2018 that covered a one week pay period ending April 7, 2018.  Fitzgerald's overall gross wage for that pay period was $1,726.58.  The pay stub provided to Fitzgerald by Forest River indicates that Fitzgerald worked 46.00 total hours in the work week.  For her "regular" work, Fitzgerald was paid lump sum wages totaling $1,620.87.  In the category called "overtime," Fitzgerald was paid for 6.00 hours a lump sum of only $105.71.  This equates to overtime pay at only $17.62/hour multiplied by 6.00 overtime hours.  It appears this $17.62/hour figure is equal to one-half of an hourly rate created when $1,620.87 was divided by a full 46.00 hours.  This wage calculation substantially underpaid Fitzgerald's overtime wages, because the calculation failed to pay Fitzgerald at all for "non-productive hours" she worked, and calculated overtime at an unlawful, half-time rate that illegally and improperly included "non-productive hours" of work to dilute and underpay Fitzgerald's overtime, using a diluted "regular rate" of pay.  Fitzgerald's "non-productive hours" worked during this pay period would have been at least 4.60 hours (at least 10% of 46.00 total hours).  This means only 41.4 of Fitzgerald's work

hours could be treated as "productive hours" for purposes of calculating her regular rate of pay and calculating her overtime rate of pay.  Proper calculation of Fitzgerald's wages for this work week had to be calculated in a manner consistent with 29 USC § 778.318(b), as follows:

a.    Fitzgerald's piece rate or lump sum wages of $1,620.87 must be divided by only the productive hours of work, 41.4 hours, and a regular rate of pay of $39.15, would result;

b.    Fitzgerald's 6.00 overtime hours of work would be multiplied by her overtime rate - $58.73/hour, which is an amount equal to one and one-half times her $39.15/hour regular rate - resulting in $352.35 in overtime wages;

c.    Fitzgerald's total, properly paid wages for the week would be $1,973.22 ($1,620.87 straight time plus $352.35 overtime wages).

51.    For this same workweek ending December 1, 2018, Forest River only paid Fitzgerald a total of $1,726.58.  This means that Forest River underpaid Fitzgerald's overtime wages in this one-week period by $246.64.  When doubled under the FLSA's presumptive liquidated damage provision, Forest River would owe Fitzgerald damages of $493.28 for this one work week alone.

52.    In the same manner described above, Forest River improperly calculated overtime owed to Fitzgerald and similarly situated Forest River employees in many, many weeks (thousands) during the relevant time period in which the employee was paid on a piece rate basis and the employee also worked overtime hours (hours in excess of 40 in the workweek).  Forest River calculated overtime under this piece rate system in order to dilute employees' regular rates of pay and to improperly and illegally dilute employees' overtime rates of pay, resulting in very substantial, class-wide underpayment of earned overtime.

53.    During the time period of three years pre-dating the filing of this lawsuit and forward, Defendant employed, and continues to employ, numerous other workers with

substantially similar job requirements as Plaintiff who were paid with substantially similar methods of pay as Plaintiff and are/were not paid time and one-half their lawful regular rates of pay for all hours worked over 40 per workweek.

54.     Defendant's company-wide pay practices described herein did not comply with the requirements under 29 U.S.C. § 207(a)(1); 29 U.S.C. § 207(g); 29 C.F.R. § 778.109; 29 C.F.R. §778.318 or with caselaw interpreting the same.

55.     During the time period of three years pre-dating the filing of this lawsuit and forward, Defendant employed, and continues to employ, numerous other workers with substantially similar job requirements as Plaintiff who were paid with substantially similar methods of pay as Plaintiff and are/were not paid time and one-half their lawful regular rates of pay for all hours worked over 40 per workweek.

56.     Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216.

57.     Federal law requires employers to make and keep accurate and detailed payroll data for certain employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a). Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. §516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

58.     "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

59.     "The Court…shall, in addition to any judgment awarded to the [prevailing] plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

60.     The FLSA provides for a two-year statute of limitations for violations of the statute. 29 U.S.C. § 255(a). However, that time period may be extended to three years if the employer's conduct was in willful violation of the law. *Id.* Forest River very definitely willfully and deliberately violated Plaintiff and putative collective action members' FLSA rights, mandating an application of the FLSA's three-year statute of limitations.

**B.   Facts Supporting Plaintiff's FLSA Collective Action Claims Based Upon Illegal Wage Deductions Which Violate the Fair Labor Standards Act**

61.     Fitzgerald incorporates the preceding paragraphs by reference as if set forth fully in this section.

62.     Based upon information and belief, Fitzgerald estimates that Forest River has employed 1,000 or more workers in the States of Indiana, Michigan, Georgia, California and Oregon over the period of time from December 1, 2017 to the present (particularly with employee turnover).

63.     Forest River subjected Fitzgerald and all of its employees to illegal wage deductions that constituted unlawful kickbacks and violated the "free and clear, no kickback" rule under the FLSA.  See 29 CFR § 531.35.  These wage deductions which violated the free and clear, no kickback rule under the FLSA included, but were not limited to, deductions to cover

costs of tools and equipment that Forest River required its employees to purchase for work and which benefitted only Forest River.  Forest River actually took repeated wage deductions from Fitzgerald and all similarly situated workers throughout employment that constituted the kickbacks described and cut into earned overtime wages owed to Fitzgerald and all similarly situated employees.

64.     Fitzgerald is specifically alleging that Forest River has taken illegal wage deductions in violation of the FLSA, see 29 CFR § 531.35, and in so doing, Forest River has committed overtime wage violations against Fitzgerald  and each and every other similarly situated Forest River employee every time such a kickback deduction was taken in a week an employee earned and was owed overtime compensation.  29 CFR § 531.5 provides:

> **"§ 531.35 "Free and clear" payment; "kickbacks."**
>
> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum **or overtime wages required to be paid him under the Act**. See also in this connection, § 531.32(c)."  (emphasis added).

65.     Every Forest River employee was harmed in the exact same way.  Forest River has and had no legal authority to take any of the unlawful kickbacks/ wage deductions at issue in this FLSA collective action, particularly as employees cannot waive their right to be protected by the FLSA.

66.     For purposes of this FLSA collective action lawsuit, Fitzgerald is similarly (and identically) situated to all Forest River employees who were subjected to one or more unlawful wage deductions taken by Forest River in a pay stub category it calls "TOOL."

67.     Forest River's illegal kickback deductions for tools and equipment were taken from Fitzgerald's and similarly situated employees' wages in a payroll category Forest River called "TOOL." Such illegal kickbacks particularly cut into rate based or lump sum pay that Forest River paid Fitzgerald and all similarly situated coworkers wages because the lump sum or "regular" rate pay included wages for overtime hours of work (hours in excess of 40 in a work week), which Forest River also used as an excuse to limit overtime pay to a reduced "half-time rate." The kickbacks taken by Forest River actually cut into Fitzgerald's and her similarly situated coworkers' overtime wages, which is an express violation of 29 USC § 531.35.

68.     To provide a specific example of the type of FLSA overtime wage violation at issue in this lawsuit, Fitzgerald describes wage deductions taken in the category Forest River calls "Tool." Hayes has a pay stub dated December 7, 2018 which shows year to date "TOOL" deductions of $55.50. Fitzgerald does not presently have the specific date(s), but based upon information, belief and personal experience, during calendar year 2018, in one or more work week, Forest River deducted sums in the "TOOL" category of up to and including $55.50 during weeks in which Fitzgerald was owed overtime wages and was being paid wages on Forest River's piece rate basis. The "TOOL" deduction(s) was taken for cost of tools which Forest River required Fitzgerald to use for employment and was solely for Forest River's benefit. Such deduction(s) cut into Fitzgerald's overtime wages and constituted a clear violation of the FLSA's free and clear, no kickback rule at 29 CFR § 531.35. Under the FLSA, for the weeks in 2018 that Forest River took "TOOL" deductions when Fitzgerald worked overtime hours and earned

18

overtime compensation, Fitzgerald is owed an amount equal to the "TOOL" deduction plus an additional presumptive FLSA liquidated damage in an equal amount.[3]

69.     Forest River took the same type of "TOOL" kickback deductions from Fitzgerald and similarly situated Forest River employees in many, many weeks (thousands) during the relevant time period in which the deductions were FLSA kickbacks and, in the same way as described above, cut into the employee's "overtime wages" in violation of 29 USC § 531.35.

70.     As described above, Fitzgerald was an actual victim of Forest River's unlawful wage deductions and illegal kickbacks during her employment with Forest River.  The same is true of all of Fitzgerald's similarly situated coworkers, subjected to a common and illegal wage deduction policy and practice.

71.     Forest River intentionally and knowingly violated its employees' rights to earned wages through Forest River's illegal wage kickback and wage deduction practices.

72.     Fitzgerald and all similarly situated Forest River coworkers have been harmed by Forest River's systematic policies and practices of taking illegal wage deductions, all of which profited Forest River and worked to the detriment and harm of Forest River's employees.  These illegal wage deductions are clearly the product of a conscious policy decision made by Forest River to pay its employees less than their full, earned overtime wages.

73.     Forest River's class-wide, illegal kickbacks and wage deductions constitute intentional, deliberate and bad faith violations of the FLSA and subject Forest River to the application of the FLSA's three-year statute of limitations.

---

[3] See also *Donovan v. Crisostomo*, 689 F.2d 869, 876 (9th Cir.1982) (kickbacks in overtime weeks violate the FLSA); *Trentman v. RWL Communications, Inc*., 2015 WL 2062816 *1 (M.D. Fla. May 4, 2015) (district court conditionally certified a FLSA collective action claim for a group of piece-rate workers, who also worked overtime, but were subjected to illegal FLSA kickbacks for equipment, tools, fuel and "go backs.")

74.     As described above, important to this company-wide FLSA collective action, the FLSA provides specific protections to wage earners which may not be waived or contracted away.

75.     By way of this Complaint, Fitzgerald seeks for herself and for all other similarly situated Forest River employees and former employees all unpaid wages (illegally deducted wages), all unpaid overtime compensation, plus any and all liquidated damages under the FLSA. Additionally, Fitzgerald seeks payment of her reasonable attorney's fees, costs and expenses.

## V.      PLAINTIFFS' CLAIMS

### A. Fair Labor Standards Act Overtime Claims Based Upon Unlawful Piece Rate Wage Payments

76.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

77.     This action is authorized and instituted pursuant to the FLSA. 29 U.S.C. §§ 201, *et seq.*

78.     At times relevant, Plaintiff was an employee of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e).

79.     At times relevant, the collective action members are and/or were employees of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e).

80.     At times relevant, Plaintiff and the putative collective action members were not exempt from the protections of the FLSA.

81.     At all material times, Defendant is and has been an eligible and covered employer pursuant to the FLSA. 29 U.S.C. § 203(d).

82.     At all material times, Defendant is and has been an "enterprise engaged in commerce" as that phrase is used in connection with the FLSA. 29 U.S.C. § 203(s)(1)(A).

20

83.    Defendant is required to pay Plaintiff and the putative collection action members overtime compensation equal to one and one-half of their lawful regular rates of pay for all hours worked over 40 in a workweek.

84.    Defendant did not pay Plaintiff and the putative collection action members overtime compensation equal to one and one-half of their lawful regular rates of pay for all hours worked over 40 in a workweek.  Instead, Defendant paid Plaintiff and the putative collective action members overtime compensation based on improperly calculated regular rates of pay. This policy and practice violates the FLSA.

85.    In calculating the regular rates of pay for purposes of computing overtime compensation for Plaintiff and the putative collection action members, Defendant improperly included in the calculation unpaid nonproductive hours.  This policy and practice violates the FLSA.

86.    There is no and was no agreement between Defendant, on the one hand, and Plaintiff and the putative collective action members, on the other hand, that allows/allowed Defendant to deviate from the requirements of the FLSA, including the rule under 29 C.F.R. §778.318(b) for calculating the regular rate of pay for piece rate work. With the exception of inventorying, no wages were paid for non-productive time worked. Accordingly, the regular rate of pay for piece rate workers, such as Plaintiff and the putative collective action members, should be calculated by dividing all piece rate pay received in a workweek by productive hours worked in that workweek up to 40 hours. 29 C.F.R. § 778.318(b). The Plaintiff and putative collective action members are/were due time and one-half that regular rate of pay for all hours worked over 40 in each such workweek, inclusive of productive and non-productive time.

87.     Defendant's failure to pay Plaintiff and the putative collective action members all overtime premium compensation owed is a violation of the FLSA. 29 U.S.C. § 207(a)(1), 29 U.S.C. § 216(b).  This includes overtime wages impaired or not paid due to unlawful kickback deductions taken by Defendant from Plaintiff and putative collective action members' wages in categories Defendant calls "TOOL."

88.     At all times relevant, and on information and belief, Defendant has been aware of the overtime wage requirements of the FLSA for Plaintiff and other similarly situated employees.

89.     Defendant's violations of the FLSA are willful within the meaning of 29 U.S.C. §255(a). For example, at all material times, Defendant was aware that Plaintiff and the putative collective action members regularly worked in excess of 40 hours per seven day workweek, but were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each and every such workweek.  Plaintiff and collective action members were not paid full overtime in each week she was subjected to a "TOOL" kickback deduction and also worked more than forty hours.

90.     Plaintiff, on behalf of herself and all others similarly situated, seeks all damages available under the FLSA, including back wages, liquidated damages, legal fees, costs, and post-judgment interest. The relevant time period for the FLSA claims in this lawsuit is three years preceding the date it was filed and forward.

   **B.  Fair Labor Standards Act Claims Based Upon Illegal Kickback Deductions**

91.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

92.     This action is authorized and instituted pursuant to the FLSA. 29 U.S.C. §§ 201, *et seq.*

93.     At times relevant, Fitzgerald was an employee of Forest River pursuant to the FLSA. 29 U.S.C. § 203(e).

94.     At times relevant, the collective action members are and/or were employees of Forest River pursuant to the FLSA. 29 U.S.C. § 203(e).

95.     At times relevant, Fitzgerald and the putative collective action members were not exempt from the protections of the FLSA.

96.     At all material times, Forest River is and has been an eligible and covered employer pursuant to the FLSA. 29 U.S.C. § 203(d).

97.     At all material times, Forest River is and has been an "enterprise engaged in commerce" as that phrase is used in connection with the FLSA. 29 U.S.C. § 203(s)(1)(A).

98.     Forest River is required to pay Fitzgerald and the putative collective action members overtime compensation equal to one and one-half of their lawful regular rates of pay for all hours worked over 40 in a workweek.  This obligation includes a FLSA prohibition against taking any type of kickback deduction that cuts into employees' overtime wages.

99.     As described above, Forest River subjected Fitzgerald and all of its employees to illegal wage deductions that constituted unlawful kickbacks and violated the "free and clear, no kickback" rule under the FLSA.  See 29 CFR § 531.35.  These wage deductions which violated the free and clear, no kickback rule under the FLSA included, but were not limited to, deductions to cover costs of tools and equipment that Forest River required its employees to purchase for work and which benefitted only Forest River.  Forest River actually took repeated wage deductions from Fitzgerald and all similarly situated workers throughout employment that constituted the kickbacks described and cut into earned overtime wages owed to Fitzgerald and all similarly situated employees.

100.    Fitzgerald is specifically alleging that Forest River has taken illegal wage deductions in violation of the FLSA, see 29 CFR § 531.35, and in so doing, Forest River has committed overtime wage violations against Fitzgerald and each and every other similarly situated Forest River employee every time such a kickback deduction was taken in a week an employee earned and was owed overtime compensation.

101.    Forest River did not fully and properly pay Fitzgerald and the putative collective action members overtime compensation equal to one and one-half of their lawful regular rates of pay for all hours worked over 40 in a workweek in each week Forest River took an illegal kickback deduction from an employee's wages in the same week the employee earned and was owed overtime wages.  This policy and practice violates the FLSA.

102.    Forest River's failure to pay Fitzgerald and the putative collective action members all overtime premium compensation owed is a violation of the FLSA. 29 U.S.C. § 207(a)(1), 29 U.S.C. § 216(b).  This includes overtime wages impaired or not paid due to unlawful kickback deductions taken by Forest River from Fitzgerald and putative collective action members' wages in categories Forest River calls "TOOL."

103.    At all times relevant, and on information and belief, Forest River has been aware of the overtime wage requirements of the FLSA for Fitzgerald and other similarly situated employees.

104.    Forest River's violations of the FLSA are willful within the meaning of 29 U.S.C. § 255(a). For example, at all material times, Forest River was aware that Fitzgerald and the putative collective action members regularly worked in excess of 40 hours per seven day workweek, but were not paid full overtime in each week each was subjected to a "TOOL" kickback deduction.

24

105.    Fitzgerald, on behalf of herself and all others similarly situated, seeks all damages available under the FLSA, including back wages, liquidated damages, legal fees, costs, and post-judgment interest. The relevant time period for the FLSA claims in this lawsuit is three years preceding the date it was filed and forward.

## VI.    COLLECTIVE ACTION ALLEGATIONS

106.    Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

109.    Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis.

110.    Plaintiff seeks to represent a collective action under 29 U.S.C. § 216(b) on behalf of herself and all current and/or former employees of Defendant who, like Plaintiff, work/worked for Defendant as non-exempt manufacturing employees in the United States, are/were paid on a piece rate basis by Defendant, and are not/were not paid all overtime wages owed under the FLSA.

111.    The relevant time period for this collective action is three years preceding the date this lawsuit was filed and forward, or such other time period deemed appropriate by the Court.

112.    Plaintiff reserves the right to establish additional sub-classes and/or modify class notice language as appropriate in any collective action certification motion, order from the Court, or other proceeding.

113.    Plaintiff further reserves the right to amend the definition of the putative collective action class, or sub-classes therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## VII.   DAMAGES AND PRAYER

114.   Plaintiff asks that the Court issue a summons for Defendant to appear and answer, and that Plaintiff and FLSA collective action members be awarded a judgment against Defendant or order(s) from the Court for the following:

a)   An order conditionally certifying this case as a FLSA collective action (or sub-class/collective actions as deemed appropriate by the Court) and requiring notice to be issued to all putative collective action members;

b)   All damages allowed by the FLSA for Plaintiff and the FLSA collective action members including back overtime wages and liquidated damages in an amount equal to same;

c)   Legal fees;

d)   Costs and expenses;

e)   Post-judgment interest; and

f)   All other relief to which Plaintiffs and FLSA collective action members are entitled as shown by the facts in this lawsuit.

Dated: December 1, 2020.

Respectfully submitted,

/s/Robert. P. Kondras, Jr.
Robert P. Kondras, Jr. (18038-84)
HASSLER KONDRAS MILLER LLP
100 Cherry St.
Terre Haute, IN 47807
Telephone: (812) 232-9691
Facsimile: (812) 234-2881
Email: kodras@hkmlawfirm.com

/s/Hans A. Nilges
Hans A. Nilges (OH Bar 0076017)
**Nilges Draher LLC**
7266 Portage Street, N.W., Suite D

26

Massillon, OH 44646
Telephone: (330) 470-4428
Facsimile: (330) 754-1430
Email: hans@ohlaborlaw.com


Robi Baishnab (OH Bar 0086195)
**Nilges Draher LLC**
34 N. High St., Ste. 502
Columbus, OH 43215
Telephone: (614) 318-9738
Facsimile: (330) 754-1430
Email: rbaishnab@ohlaborlaw.com

*Counsel for Plaintiff*


## <u>REQUEST FOR TRIAL BY JURY</u>

Comes now Plaintiff Heather R. Fitzgerald, by counsel, and requests a trial by jury on all issues which may be tried to a jury.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

By /s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.