UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HEATHER R. FITZGERALD, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FOREST RIVER MANUFACTURING LLC,<br><br>Defendant. | CAUSE NO. 3:20-CV-1004 DRL-MGG |

OPINION & ORDER

Heather Fitzgerald alleges that Forest River Manufacturing LLC violated the Fair Labor Standards Act (FLSA) by diluting her overtime wages through its piece-rate wage system. She seeks conditional certification under 29 U.S.C. § 216(b) for purposes of authorizing notice to similarly situated employees. The court grants her motion for conditional certification.

BACKGROUND

Ms. Fitzgerald filed her first motion to conditionally certify a collective action under FLSA on February 11, 2021. Forest River requested expedited discovery. The court denied the motion for conditional certification with leave to renew and authorized limited pre-certification discovery. Ms. Fitzgerald renewed her motion following this discovery.

The following facts emerge from the limited record submitted by the parties.[1] Forest River is in the business of manufacturing recreational vehicles, such as motorhomes and recreational camper trailers. Ms. Fitzgerald was employed by Forest River and its predecessor company, Coachmen, from

---

[1] Ms. Fitzgerald submitted deposition testimony (including testimony from four opt-in plaintiffs), eight declarations, pay stubs, Forest River's employee handbook, and job descriptions. She also says the fact that Forest River pays employees on a piece-rate basis has been publicly reported. Ms. Fitzgerald's complaint includes overtime claims based on the company's piece-rate wage system and claims based on wage deductions. Ms. Fitzgerald has only moved to conditionally certify her overtime claims, so the court focuses on the evidence related to these claims today.

mid-2003 until her voluntary resignation in February 2019, though she left her employ on two occasions during that timeframe. She worked for Forest River as a manufacturing employee at three different plants in Middlebury, Indiana. As a non-exempt employee, she regularly worked in excess of 40 hours per workweek.

Ms. Fitzgerald clocked in at the beginning and end of her workday. She says she was paid based on the number of units she completed—known as piece-rate pay. The time she spent completing units was considered productive time, while the time she spent waiting for units, taking inventory, and performing other tasks was considered non-productive time.[2] She conservatively estimates that she spent at least ten percent of her work time in non-productive hours. She testified that the waiting time was unpaid, but it did go toward whether she worked 40 hours and qualified for overtime. She says Forest River didn't keep records that differentiated between an employee's productive time and non-productive time. Ms. Fitzgerald testified that she frequently asked how the piece-rate pay was calculated, but she never figured it out [ECF 56-6 at 27:21-28:5].[3]

Ms. Fitzgerald claims that Forest River didn't pay her for non-productive time (save a separate hourly rate for time spent taking inventory). She says she didn't have an agreement with Forest River

---

[2] Four opt-in plaintiffs testified that they also experienced frequent waiting and cleaning time. Haley Boyd experienced downtime waiting on other units, waiting for materials to come in, and cleaning [ECF 56-5 at 42:8-25]. Allen Gross helped others in his group and did cleaning during downtime [ECF 56-7 at 107:3-22]. Angela Hall testified that "[e]very day we would have downtime" [ECF 56-8 at 22:6-12]. Michael Yost said he experienced times sitting around waiting, and the waiting time "would vary on the week and the situation" [ECF 56-9 at 75:4-11]. While he was waiting, he would clean [*id.* 102:10-19].

[3] Four opt-in plaintiffs shared similar testimony. When asked for her best description of the piece-rate system, Ms. Boyd said, "I didn't, I didn't understand it all. Because it didn't never match up with what we got. Nothing seemed – nothing was – it was all confusing" [ECF 56-5 at 54:12-18]. Mr. Gross said, "[I]t's a mystery. Even your plant managers can't tell you where the piece rate comes from or how it's made" [ECF 56-7 at 54:22-55:3]. When asked if she understands, even generally, how the piece rate works, Ms. Hall said, "No" [ECF 56-8 at 129:2-6]. Mr. Yost said, "I don't know what – as far as I know, I got paid for what went out the door. So I don't know what affected the amount that I actually received" [ECF 56-9 at 61:13-19]. Their lack of understanding is not as material as the absence of an agreement today.

that would count production pay as pay for all hours worked.[4] Furthermore, she asserts that Forest River paid her only a one-half premium for overtime hours, instead of one and one-half times the regular rate. She says Forest River improperly calculated her regular rate of pay by including productive and unpaid non-productive hours in the regular rate calculation.

For example, Ms. Fitzgerald says she was paid $1,726.58 in one week (pay period ending April 7, 2018). She worked a total of 46 hours in that workweek. For her regular work, she was paid lump sum wages totaling $1,620.87. For overtime, she was paid $105.71 for six hours. She says this would equate to overtime pay at roughly $17.62 per hour, which is only equal to one-half of an hourly rate created when $1,620.87 is divided by a full 46 hours.[5] She says she would have worked at least 4.60 non-productive hours during this week (or at least ten percent of 46 hours). According to her, this means only 41.40 hours of her work could be treated as productive time for purposes of calculating her regular rate of pay and overtime pay. Had Forest River calculated her regular rate of pay using only her productive hours and her overtime rate using the appropriate regular rate and a one and one-half times multiplying factor, she claims her total wages for the week would have been $1,973.22. She was not paid this difference of $246.64.

Ms. Fitzgerald says Forest River improperly calculated her overtime pay and the overtime pay of similarly situated employees for thousands of weeks during the relevant time period in which she

---

[4] When asked if Ms. Fitzgerald had any type of written agreement with Forest River that governed the payment of her wages on a piece-rate basis, David Besinger, HR director and in-house counsel for Forest River, said, "Other than the handbook, I don't believe there's any written agreement because everybody knows how piece rate works" [ECF 56-10 at 80:1-81:3]. Forest River doesn't conduct any type of training or presentation for its production employees where it explains the piece-rate system [*id.* 91:3-7].

[5] Mr. Besinger testified that Forest River was using a "halftime rate" for Ms. Fitzgerald's overtime pay [ECF 56-10 at 127:2-7; *see also* ECF 59-1, Ex. 1 ¶ 17]. On this record, this seems contradictory to the Forest River Employee Handbook, which says, "If you are a 'piece rate' employee whose normal rate of pay depends upon the number of pieces you produce, and if you perform overtime work, you will be paid a rate of one and one-half (1-1/2) times your piece rate of pay for the pieces you produce during any overtime worked" [ECF 56-1, Ex. B at 17]. Melissa Faulkner, Forest River's payroll manager, explained that "[b]ecause that employee has already received straight-time pay for the overtime hours worked, the additional half-time would mean that the employee would be effectively receiving time and a half for all overtime hours worked" [ECF 59-1, Ex. 2 ¶ 8].

and the other employees were paid on a piece-rate basis and worked overtime hours. Forest River's pay system allegedly includes calculating a regular rate of pay using productive and non-productive hours and then reducing overtime premiums to a half-time rate (rather than a one and one-half regular rate). Ms. Fitzgerald thus requests that her overtime claims be conditionally certified as a collective action under 29 U.S.C. § 216(b). Her motion is ripe for review.

## DISCUSSION

### A.  *Standard for Conditional Certification under FLSA.*

FLSA allows an employee to sue for unpaid overtime compensation through a collective action with other "similarly situated" employees. 29 U.S.C. § 216(b); *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010); *Hayes v. Thor Motor Coach, Inc.*, 502 F. Supp.3d 1342, 1345 (N.D. Ind. 2020). A collective action mirrors yet differs from a class action. *See* Fed. R. Civ. P. 23. A typical class action includes all putative plaintiffs that meet the class's definition unless they opt out, whereas plaintiffs who want to become part of a collective action must affirmatively opt-in. *See Alvarez*, 605 F.3d at 448; *see also Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013). FLSA says as much: "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

The court has discretion to facilitate notice of a conditional collective action to those "similarly situated" to the named plaintiff, here Ms. Fitzgerald. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). "The twin goals of collective actions are enforcement and efficiency: enforcement of the FLSA, by preventing violations of the overtime-pay requirements and by enabling employees to pool resources when seeking redress for violations; and efficiency in the resolution of disputes, by resolving in a single action common issues arising from the same alleged illegal activity." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020). FLSA fosters these goals by permitting collective actions for similarly situated employees. *See id.*

At the same time, the court "must be scrupulous to respect judicial neutrality," avoiding even the appearance of endorsing the action's merits. *Hoffmann-La Roche*, 493 U.S. at 174. Collective actions present certain risks too—restructuring litigation leverage and increasing pressure to settle, no matter the action's merits, and soliciting claims in a manner that differs from the court's role of facilitating notice for case management purposes, *see id.*, appreciating that efficiency may mean weeding out those who opt into the suit later if this isn't done at the expense of neutrality or abuse of an improper collective action notice, *Bigger*, 947 F.3d at 1050.

FLSA leaves "similarly situated" undefined, but it means that putative collective action members share with the plaintiff "common issues of law and fact arising from the same [unlawful] activity." *Hoffmann-La Roche*, 493 U.S. at 170. Most courts, and indeed courts in this circuit, take a dual approach in determining whether other employees are similarly situated to the plaintiff. At the first step, often before discovery, the plaintiff has the burden to submit affidavits or other evidence to make a "modest showing" that she is "similarly situated" to other employees. *See Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *Sagendorf v. Quality Huts, LLC*, 2019 U.S. Dist. LEXIS 52739, 5-6 (N.D. Ind. Mar. 28, 2019); *Dominguez v. Don Pedro Rest.*, 2007 U.S. Dist. LEXIS 6659, 4-5 (N.D. Ind. Jan. 25, 2007). The second step occurs after discovery—permitting the defendant to seek decertification of the class when the law holds the class to a more stringent standard. *See Espenscheid*, 705 F.3d at 772; *Dominguez*, 2007 U.S. Dist. LEXIS 6659 at 8.

Today the court must determine whether to certify the class conditionally—the first step. A plaintiff cannot meet her burden merely with the complaint's allegations. *See Myers*, 624 F.3d at 555; *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991); *Dominguez*, 2007 U.S. Dist. LEXIS 6659 at 7-8; *cf. Bell v. PNC Bank, N.A.*, 800 F.3d 360, 377 (7th Cir. 2015) (analyzing allegations under Rule 23) ("This does not mean, however, that on issues affecting class certification, a court must

5

simply assume the truth of the matters as asserted by the plaintiff."). After discovery has been conducted on the issue of conditional certification, courts generally apply more scrutiny to the plaintiff's claims. *See Boelk v. AT&T Teleholdings, Inc.*, 2013 U.S. Dist. LEXIS 20606, 40 (W.D. Wis. Jan. 10, 2013); *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 439 (S.D. Ind. 2012) (applying "intermediate level of scrutiny" to conditional certification when substantial fact discovery had been conducted); *Scott v. Now Courier, Inc.*, 2012 U.S. Dist. LEXIS 43710, 23-24 (S.D. Ind. Mar. 29, 2012) (same). This sliding scale, what some courts call a "modest plus" showing, recognizes that the plaintiff has benefitted from some discovery to present a case of similarly situated employees.

This court has bemoaned the "modest" and "modest plus" concepts—as they are unmoored from the statute, unhinged from any recognized or defined standard for assessing evidence, foreign from what federal courts seem to be really doing, and ostensibly divorced from the goals of enforcement and efficiency that must be promoted ever mindful of the parallel risks to neutrality and case leverage in FLSA conditional certification cases. *See McColley v. Casey's Gen. Stores*, 2021 U.S. Dist. LEXIS 62548, 7-9 (N.D. Ind. Mar. 31, 2021); *see also Bigger*, 947 F.3d at 1049. "Federal courts are accustomed to assessing evidence against defined standards. . . . [S]tandards all benefit from explanations of what they mean so that the task of assessing evidence becomes more than just reflexive but an exercise of the court's discretion within this process." *McColley*, 2021 U.S. Dist. LEXIS 62548 at 7-8. The terms "modest" and "modest plus"—though they have been used repeatedly for years—still to this day lack definition. Just because the "FLSA certification two-step remains the dance of this circuit," *id.* at 9, does not answer the question what scrutiny should apply to the first step—at conditional certification—and how the court should precisely define that scrutiny.

This court has inkled the use of a preponderance standard—a defined and well-established evidentiary standard that federal courts use all the time, even when assessing an inchoate record. It is the same standard that federal courts employ to decide whether to certify a class under Rule 23, though

that decision too may occur without full discovery or based on an emerging record. *See Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 597 (7th Cir. 2021). In FLSA cases, the court must ensure that those who receive notice of this action are indeed "similarly situated," 29 U.S.C. § 216(b), and how else should that be done except when the court is persuaded that it is more likely true than not. Else "the notice would misinform most recipients—by indicating that they may join the action when, in truth, they may not—and the notice would unfairly amplify settlement pressure." *Bigger*, 947 F.3d at 1049.

Once more the court says it, and perhaps more strongly today. Though Forest River at times alludes to a more exacting review than "modest" or "modest plus," whatever those concepts may mean, *see Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 433-34 (5th Cir. 2021), the company stops short of advocating for a different standard or defining what that standard should be. And employing a preponderance of the evidence standard leads the court to the same conclusion today: that this action should be conditionally certified to facilitate FLSA notice.

B.  *Renewed Motion for Conditional Certification.*

Ms. Fitzgerald's factual showing must be "sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Ahad v. Bd. of Trs. of S. Ill. Univ.*, 2017 U.S. Dist. LEXIS 160584, 3 (C.D. Ill. Sept. 28, 2017) (quoting *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014)); *accord Hoffmann-La Roche*, 493 U.S. at 170. This may take the form of affidavits or other evidence, beyond mere allegations. *See Ahad*, 2017 U.S. Dist. LEXIS 160584 at 4 (citing *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp.2d 745, 751 (N.D. Ill. 2011)); *Hayes*, 502 F. Supp.3d at 1345-46. "This evidence must demonstrate a factual nexus that binds the plaintiffs together as victims of a particular violation of the FLSA." *Ahad*, 2017 U.S. Dist. LEXIS 160584 at 4 (quotations omitted).

Ms. Fitzgerald proposes conditionally certifying the following action under FLSA:

> All current and former employees of Defendant who work/worked for Defendant as manufacturing employees in the United States, are/were paid entirely on a piece rate

7

>basis, and who worked more than forty (40) hours in at least one workweek beginning February 11, 2018 and continuing through the final disposition of this case.

[ECF 56 at 16]. Ms. Fitzgerald bears the burden of demonstrating that these potential members are similarly situated to her in light of the framed FLSA violation. *See Hoffmann-La Roche*, 493 U.S. at 170; *Vazquez v. Ferrara Candy Co.*, 2016 U.S. Dist. LEXIS 110554, 10 (N.D. Ill. Aug. 19, 2016).

There is nothing wrong with paying employees by piece-rate *per se. See, e.g.,* 29 U.S.C. § 207(g); 29 C.F.R. 778.318(c). Ms. Fitzgerald advances two problems with this piece-rate system: (1) Forest River includes non-productive time when calculating overtime rates and (2) Forest River pays overtime at a half-time rate instead of a one-and-a half-time rate. She says the piece-rate system violates FLSA because there was no agreement in place that allowed Forest River to deviate from the requirements of the law. Forest River doesn't dispute that it uses a piece-rate system to pay certain employees. Indeed, Mr. Besinger declared that certain Forest River plants pay "production employees a 'piece rate' based on the number of units they collectively assemble during each workweek" [ECF 59-1, Ex. 1 ¶ 10]. Melissa Faulkner, Forest River's payroll manager, likewise affirmed that certain plants use the piece-rate system [ECF 59-1, Ex. 2 ¶ 5]. *Cf. Hayes*, 502 F. Supp.3d at 1347-49 (dispute as to whether the defendant's "production incentive rate" system qualified as a piece-rate system).

Courts, including this one, have conditionally certified FLSA collective actions based on piece-rate systems that cause overtime violations. *See id.* at 1347-50 (conditionally certifying action for non-exempt manufacturing employees at a motorhome manufacturing company who were paid on a piece-rate basis); *Kautsch v. Premier Commc'ns*, 504 F. Supp.2d 685, 689-90 (W.D. Mo. 2007) (conditionally certifying action for technicians who were paid pursuant to the same piece-rate procedure); *Balarezo v. NTH Connect Telecom, Inc.*, 2008 U.S. Dist. LEXIS 53102, 5-7 (N.D. Cal. May 2, 2008) (conditionally certifying action for non-exempt piece-rate installers who typically worked more than 40 hours per week without overtime pay).

8

Likewise here, Ms. Fitzgerald has sufficiently demonstrated that she and other potential plaintiffs together were victims of a common policy or plan. She and the other opt-in plaintiffs affirmed that they (1) were paid on a piece-rate basis for their productive hours only,[6] (2) were not given an explanation of how their wages were calculated,[7] (3) were not paid for most of their non-productive hours waiting or cleaning,[8] (4) didn't have an agreement with Forest River about counting non-productive hours when calculating overtime rates,[9] and (5) worked more than 40 hours in many workweeks.[10] The record also establishes that Forest River paid piece-rate to employees at 36 plants where employees worked similarly in the manufacture of units, and did so under a single employee handbook that included a provision governing piece-rate pay.

FLSA allows employees to be paid at piece-rate for all time worked (productive and nonproductive), *see* 29 U.S.C. § 207(g), so long as it is understood by the parties that the employee is being compensated for all hours worked, *see* 29 C.F.R. § 778.318(c). Ms. Fitzgerald and the other opt-in plaintiffs swore that they were paid on a piece-rate system, that they weren't paid for most of their non-productive hours, and that they didn't have an agreement with Forest River about their piece-rate pay covering their non-productive hours. When asked if Forest River had any written agreements in place, the company's general counsel and human resource manager testified, "Other than the handbook, I don't believe there's any written agreement because everybody knows how piece rate

---

[6] [ECF 56-1, Fitzgerald Decl. ¶ 4; ECF 56-2, Hall Decl. ¶ 4; ECF 56-2, Shepherd Decl. ¶ 4; ECF 56-2, Boyd Decl. ¶ 4; ECF 56-2, Yost Decl. ¶ 4; ECF 56-2, McCain Decl. ¶ 4].

[7] [ECF 56-1, Fitzgerald Decl. ¶ 8; ECF 56-2, Hall Decl. ¶ 8; ECF 56-2, Shepherd Decl. ¶ 8; ECF 56-2, Boyd Decl. ¶ 8; ECF 56-2, Yost Decl. ¶ 8; ECF 56-2, McCain Decl. ¶ 8].

[8] [ECF 56-1, Fitzgerald Decl. ¶ 5; ECF 56-2, Hall Decl. ¶ 5; ECF 56-2, Shepherd Decl. ¶ 5; ECF 56-2, Boyd Decl. ¶ 5; ECF 56-2, Yost Decl. ¶ 5; ECF 56-2, McCain Decl. ¶ 5].

[9] [ECF 56-1, Fitzgerald Decl. ¶ 8; ECF 56-2, Hall Decl. ¶ 8; ECF 56-2, Shepherd Decl. ¶ 8; ECF 56-2, Boyd Decl. ¶ 8; ECF 56-2, Yost Decl. ¶ 8; ECF 56-2, McCain Decl. ¶ 8].

[10] [ECF 56-1, Fitzgerald Decl. ¶ 12; ECF 56-2, Hall Decl. ¶ 10; ECF 56-2, Shepherd Decl. ¶ 11; ECF 56-2, Boyd Decl. ¶ 10; ECF 56-2, Yost Decl. ¶ 10; ECF 56-2, McCain Decl. ¶ 10].

works" [ECF 56-10 at 80:1-81:3]. Thus, even his testimony underscores what in part situates these plaintiffs together—that they didn't agree to their lump sum piece-rate pay as also intending to cover their non-productive time.

In response to Ms. Fitzgerald's claim that she and other piece-rate workers don't understand how their wages are calculated, Forest River argues that it is unnecessary for employees to understand the precise method by which their regular rate and overtime pay are calculated. The company's point has some merit based on the legal standard that applies to this stage, though it fails to wrestle with the true issue that the company and piece-rate employees, at least on this record, lacked the meeting of the minds—namely a consistent agreement—that now situates these employees similarly. *See also McColley*, 2021 U.S. Dist. LEXIS 62548 at 16 ("[r]esolving the merits is for another time").

Forest River next argues that an agreement between an employer and an employee under the FLSA need not be in writing, and by remaining employed at Forest River year after year and receiving detailed paystubs, Ms. Fitzgerald agreed or at least understood that her piece-rate pay compensated her for activities such as waiting and cleaning. This view of an implied understanding seems less than cogent based on the record that exists today, particularly when even the company's top brass ostensibly responsible for the piece-rate system's implementation was less than clear about how it worked, and how it worked consistently with the company's employee handbook. Whether Ms. Fitzgerald had an inferred agreement with Forest River under 29 U.S.C. § 207(g) is a question for a later day; for now, all the court decides is whether Ms. Fitzgerald has met her burden for conditional certification. *See id.*

Forest River further argues that Ms. Fitzgerald and the other opt-in plaintiffs don't have personal knowledge about other employees' compensation or non-productive time. Indeed, Ms. Fitzgerald and the other opt-in plaintiffs' assertions that they "have spoken" with other Forest River

10

employees who didn't "usually get paid for their nonproductive downtime"[11] aren't probative here, particularly when they haven't been able to identify any conversations with other Forest River workers about non-productive time. Still, Ms. Fitzgerald has met her burden. She and five other piece-rate employees have provided declarations attesting that Forest River didn't pay them for most of their non-productive time. *See* n.8, *supra*; *see also Hayes*, 502 F. Supp.3d at 1350 (conditionally certifying action when plaintiff and three other employees submitted affidavits); *Dominguez*, 2007 U.S. Dist. LEXIS 6659 at 1-3 (same); *Boyd v. Jupiter Aluminum Corp.*, 2006 U.S. Dist. LEXIS 35654, 10 (N.D. Ind. May 31, 2006) (relying on submission of three employees' affidavits in certifying action).

Forest River cites *Harris v. Reliable Reports Inc.*, 2014 U.S. Dist. LEXIS 69899, 7-11 (N.D. Ind. May 21, 2014), a case where the court declined to grant conditional certification when only the named plaintiff and one other employee submitted affidavits, and both of them said they believed other employees were subjected to the same pay practices without providing any facts to support this conclusion. Here, of course, Ms. Fitzgerald has introduced more than just one other affidavit.[12] Aside from that, there is more evidence of a common policy on this record because the company's representative testified that Forest River uses a piece-rate wage scheme, that the company-wide handbook governs the payment of piece-rate wages for these employees, its seeming contrast to the system as it operates at the company (on this record), the lack of consistent understanding among the company's responsible officers, and that Forest River doesn't have individual written agreements with

---

[11] [ECF 56-1, Fitzgerald Decl. ¶ 13; ECF 56-2, Hall Decl. ¶ 11; ECF 56-2, Shepherd Decl. ¶ 12; ECF 56-2, Boyd Decl. ¶ 11; ECF 56-2, K. Sanderson Decl. ¶ 11; ECF 56-2, Yost Decl. ¶ 11; ECF 56-2, McCain Decl. ¶ 11; ECF 56-2, D. Sanderson Decl. ¶ 11].

[12] Later in its brief, Forest River cites *Gallardo v. Scott Byron & Co.*, 2014 U.S. Dist. LEXIS 4634, 64 (N.D. Ill. Jan. 14, 2014), to argue that Ms. Fitzgerald hasn't shown that enough employees are similarly situated to her with respect to her understanding about what the piece rate covers [ECF 59 at 23]. Similar to *Harris*, in *Gallardo*, the only evidence regarding whether the employees lacked a clear understanding about their compensation came from two of the lead plaintiffs. *Gallardo*, 2014 U.S. Dist. LEXIS 4634 at 64. Ms. Fitzgerald has produced more evidence than that here.

its piece-rate employees regarding the payment of their wages [ECF 59-1, Ex. 1 ¶ 10; ECF 56-10 at 80:1-81:3].

Forest River next launches a credibility attack against Ms. Fitzgerald and the other opt-in plaintiffs. Forest River says Ms. Fitzgerald's suggestion that it didn't pay her for her non-productive work is "illogical and counterintuitive" and impossible to reconcile with her other testimony [ECF 59 at 20]. Specifically, it points to her testimony acknowledging that time spent waiting and cleaning "counts towards your 40 hours but it's not technically paid" [ECF 56-6 at 35:20-36:4], agreeing that when she was paid on the hourly rate that included time spent waiting and cleaning [*id.* 67:1-6], and admitting that her basis for believing the piece rate didn't cover her non-productive time was just her own "personal understanding" [*id.* 76:7-20]. Forest River says the other opt-in plaintiffs likewise understood they were paid for their non-productive time because they knew they had to remain productive throughout the workday and that Forest River expected them to contribute to the overall productivity of the plant, even when the production line stopped [ECF 59 at 21-22]. The court generally won't wade into these credibility arguments at this stage,[13] *see Hayes*, 502 F. Supp.3d at 1349; *Nehmelman*, 822 F. Supp.2d at 760 ("At step one of the certification analysis, however, it is not proper for the [c]ourt to assess the credibility of statements made in plaintiff['s] declaration.") (quotations omitted), but nothing avoids the conclusion of substantial similarity on this record.

---

[13] In making this argument, Forest River cites *Chagoya v. City of Chi.*, 992 F.3d 607, 625 (7th Cir. 2021) for the proposition that "personal convictions that they should have been paid more" do not give rise to a wage and hour claim [ECF 59 at 22]. In that case, this circuit said, "without any other evidence in the record beyond personal convictions that they should have been paid, the operators have failed to demonstrate a genuine dispute of material fact to survive summary judgment," *Chagoya*, 992 F.3d at 625, an altogether different standard than what the court is working under here. Forest River also cites *Lockhart v. Republic Servs.*, 2021 U.S. App. LEXIS 31991, 20-21 (5th Cir. Oct. 25, 2021), another case applying the summary judgment standard. As the court has already said, resolving the merits is for another time, *see McColley*, 2021 U.S. Dist. LEXIS 62548 at 16, and today the court is permitted to weigh the evidence rather than resolve any factual disputes in favor of the non-movant.

Forest River says Ms. Fitzgerald can't possibly show on a class-wide basis that thousands of Forest River employees shared her personal understanding of what the piece rate covered, but other potential plaintiffs have sworn that they also understood the piece-rate pay as only compensating them largely for their production time. *See* n.6 *supra*. Forest River cites *Greene v. Karpeles*, 2021 U.S. Dist. LEXIS 116181, 26-27 (N.D. Ill. June 22, 2021), where a district court denied a motion for class certification under Rule 23(c) in part because determining "how each class member understood and whether each class member relied upon a contract they accepted nearly a decade ago would present insurmountable difficulties." But at this stage of conditional certification for an FLSA collective action, "it is premature to consider whether the putative class would require individualized inquires." *Montero v. JPMorgan Chase & Co.*, 2017 U.S. Dist. LEXIS 63429, 21 (N.D. Ill. Mar. 22, 2017). That issue will be more readily understood once Ms. Fitzgerald has collected all of the opt-ins from the putative class members, and the court and parties have a better sense of who is actually seeking to be included in the class moving forward. *See id.* Still, on this record, it doesn't seem insurmountable—given the consistent way the affiants, and company at times, have described the system.

Forest River has collected declarations from current and former production employees who swear that they understand the piece rate to cover "all compensable time between punching in and punching out, including time spent building a unit, waiting for a unit to move from one work station to the next, prepping parts, assisting other employees, and cleaning" [ECF 59-1, Ex. 3 ¶ 10; ECF 59-1, Ex. 4 ¶ 9; ECF 59-2, Exs. 20-23; ECF 59-3, Exs. 33-39; ECF 59-4, Exs. 40-47]. But the court needn't consider these "happy camper" declarations at this stage. *See McColley*, 2021 U.S. Dist. LEXIS 62548 at 15-16 (collecting cases). These declarations don't preclude conditional certification. At most, they demonstrate that certain employees aren't similarly situated or may have had unique experiences, but that doesn't undermine the compelling evidence on this record that there were employees who

13

were similarly situated in working within a piece-rate system that was foreign in explanation and incomplete in pay.

All told, Ms. Fitzgerald has presented facts "sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Ahad*, 2017 U.S. Dist. LEXIS 160584 at 3. Therefore, the court conditionally certifies this action under FLSA.

C. *Proposed Notice.*

Having approved conditional certification, the court next addresses Ms. Fitzgerald's proposed notice. "Absent reasonable objections by either the defendant or the [c]ourt, plaintiffs should be allowed to use the language of their choice in drafting the notice." *Ivery v. RMH Franchise Corp.*, 280 F. Supp.3d 1121, 1139 (N.D. Ill. 2017) (citation omitted).

Forest River argues that the proposed notice should be revised because it includes all piece-rate employees who worked overtime, even those who understood that the piece rate was intended to compensate them for the time Ms. Fitzgerald regards as non-productive [ECF 59 at 25]. This revision is unnecessary and may tend to make the notice more confusing. *See Piazza v. New Albertsons, LP*, 2021 U.S. Dist. LEXIS 20573, 22 (N.D. Ill. Feb. 3, 2021). Forest River further argues that the notice is misleading because it suggests that Forest River is alleged to have "miscalculated the correct overtime rate" [ECF 59 at 25]. This is framed as a mere allegation; and Ms. Fitzgerald is indeed alleging that Forest River miscalculated the correct overtime rate by including non-productive time when calculating the rate. The court declines these suggested revisions.

That said, Forest River points out that the proposed collective includes employees who were "entirely" paid by piece-rate and that the company had no such employees, particularly given that employees would log separate non-productive time that was compensated differently (*e.g.*, inventory time). Ms. Fitzgerald never opposes the deletion of the word "entirely," and its inclusion seems on this record superfluous and inconsistent with affiants who declared that they were paid "almost all"

based on a piece-rate system. The court thus orders the substitution of the word "primarily" for "entirely" in the notice.

      D.     *Forest River's Motion to Strike.*

Forest River moves to strike the affidavits submitted by opt-in plaintiffs Korbin Sanderson and Dominik Sanderson and to dismiss the Sandersons from this action. Additionally, Forest River moves to strike the portions of the affidavits submitted by the opt-in plaintiffs that aren't based on personal knowledge. The court takes up each issue in turn.

Korbin Sanderson and Dominik Sanderson didn't provide written responses to Forest River's discovery requests. Under Rule 37(c)(1), if a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information to supply evidence on a motion unless the failure was substantially justified or is harmless. "A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B). Types of sanctions include dismissing the action or proceeding in whole or in part, though dismissal is an extreme sanction to be used only in the most egregious circumstances. Fed. R. Civ. P. 37(d)(3), 37(b)(2)(A)(v); *see also Robinson v. Champaign Unit 4 Sch. Dist.*, 412 F. Appx. 873, 877 (7th Cir. 2011) (dismissal with prejudice is an "extreme sanction that should be used only as a last resort"). "[T]o dismiss a case as a sanction for discovery abuse the court must only find that the party's actions displayed willfulness, bad faith, or fault." *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009).

On February 11, 2021, Ms. Fitzgerald filed her first motion for conditional certification [ECF 24]. That motion included opt-in plaintiffs' declarations from Korbin Sanderson and Dominik Sanderson [ECF 24-2]. The court subsequently denied the motion for conditional certification with leave for Ms. Fitzgerald to renew it after the parties completed pre-certification discovery [ECF 34]. On April 13, 2021, the magistrate judge entered a phase one scheduling order for initial discovery

15

related to conditional certification [ECF 38]. On April 27, 2021, Forest River issued requests for production and interrogatories to Ms. Fitzgerald and the opt-in plaintiffs [ECF 60 ¶ 5]. Korbin and Dominik Sanderson didn't provide their responses by the deadline of May 27, 2021 [*id.* ¶ 6].

On June 9, 2021, Forest River communicated with plaintiffs' counsels about the belated discovery responses [*id.* ¶ 7]. On July 1, 2021, during the depositions of two Forest River witnesses, plaintiffs' counsel stated that the Sandersons wouldn't be providing written discovery responses because they weren't going to participate in the lawsuit [*id.* ¶ 8]. On July 6, 2021, Forest River requested that the Sandersons either file their notice of withdrawal or provide their written discovery responses [*id.* ¶ 9]. Forest River reiterated this request on July 12, 2021 [*id.* ¶ 12]. On July 15, 2021, Forest River again wrote to plaintiffs' counsel, this time, requesting that the Sandersons file a notice of withdrawal or face a motion to compel their discovery responses [*id.* ¶ 13]. Plaintiffs' counsel responded that they were trying to secure permission from the Sandersons to file the notice of withdrawal, and that if they couldn't reach the Sandersons, they would write them a letter stating that the Sandersons' consent to withdraw would be assumed if the Sandersons couldn't be reached by a certain date [*id.*]. Forest River requested a timeline for when the letter would be sent and when the Sandersons' withdrawal would be presumed [*id.*]. Plaintiffs' counsel never responded to the request for a timeline, nor did they file a notice of the Sandersons' withdrawal from this case [*id.* ¶ 16]. On September 21, 2021, Ms. Fitzgerald filed a renewed motion for conditional certification, including the declarations from the Sandersons as exhibits [*id.* ¶ 16; ECF 56-2].

Forest River cites *Cottle v. Falcon Holdings Mgmt., LLC*, 892 F. Supp.2d 1053, 1057-58 (N.D. Ind. 2012), another FLSA case from this district when the court dismissed with prejudice the claims of the opt-in plaintiffs who willfully refused to respond to the defendant's discovery requests. There the court found that no lesser sanction would cure the prejudice. *See id.* at 1058.

The parties conferred. Ms. Fitzgerald has not shown that the Sandersons' noncompliance was substantially justified or harmless. The court thus has stricken and disregarded the affidavits from the Sandersons to decide conditional certification and has done so as a sanction for their willful noncompliance with discovery. *See* Fed. R. Civ. P. 37(c)(1) ("party is not allowed to use that information or witness to supply evidence on a motion"). The court orders the Sandersons to respond to the propounded discovery by March 7, 2022. If full responses are not received by Forest River by that date, the court will dismiss the Sandersons' claims with prejudice. The company may file a mere notice of noncompliance, with any objection to be filed within three days of the notice.

As to the portions of the opt-in plaintiffs' affidavits that aren't based on personal knowledge, "[m]otions to strike are heavily disfavored, and usually only granted in circumstances where the contested evidence causes prejudice to the moving party." *Rodgers v. Gary Cmty. Sch. Corp.,* 167 F. Supp.3d 940, 948 (N.D. Ind. 2016); *see also Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (relating to materials used at summary judgment); *Kuntzman v. Wal-Mart*, 673 F. Supp.2d 690, 695 (N.D. Ind. 2009). The portions of the affidavits submitted by the plaintiffs that weren't based on personal knowledge, particularly those based on unidentified conversations with other Forest River employees, had no bearing on the court's conditional certification ruling. Forest River hasn't argued how this evidence would otherwise cause them prejudice. The court sees it as unnecessary to strike these affidavits given that these offending parts were disregarded. Accordingly, the court denies this part of the motion to strike as moot.

## CONCLUSION

Ms. Fitzgerald has met her step one burden to certify a conditional collective action for her overtime claims based on Forest River's piece-rate wage system. The court thus GRANTS her renewed motion for conditional certification [ECF 56]; GRANTS IN PART Forest River's motion to strike [ECF 60]; and CONDITIONALLY CERTIFIES the following collective:

> All current and former employees of Defendant who work/worked for Defendant as manufacturing employees in the United States, are/were paid primarily on a piece rate basis, and who worked more than forty (40) hours in at least one workweek beginning February 11, 2018 and continuing through the final disposition of this case.

Having so conditionally certified this collective under FLSA, the court now (1) DIRECTS that notice be sent by United States mail and email to all putative members; (2) APPROVES the proposed notice and consent to join form [ECF 56-4], as amended here by this opinion, informing such present and former employees of the pendency of this collective action and permitting them to opt in to the case; (3) ORDERS Forest River to provide within fourteen (14) days a roster of the foregoing members, including their full names, dates of employment, last known home addresses, and personal email addresses, including such roster in Excel or a similar exportable/importable format; (4) DIRECTS Forest River to file a declaration that the produced roster fully complies with this order; (5) ORDERS that notice, in the form approved by the court, be sent to such present and former collective members within fourteen (14) days of the plaintiff's receipt of the roster using the information containing the same; (6) ORDERS the plaintiff to file a copy of an as-complete exemplar of the notice as sent; (7) DIRECTS a notice period of ninety (90) days; and (8) AUTHORIZES duplicate copies of the notice in the event that new, updated, or corrected mailing addresses or email addresses are found for one or more of putative employee-members.

The court ORDERS Korbin and Dominik Sanderson to respond to propounded discovery by March 7, 2022, and CAUTIONS them that, if full responses are not received by Forest River by that date, the court will dismiss their claims with prejudice.

SO ORDERED.

February 23, 2022               *s/ Damon R. Leichty*
                       Judge, United States District Court